| | |
|---|---|
| DISTRICT COURT, DENVER COUNTY, COLORADO<br>Court Address:<br>1437 Bannock Street<br>Denver, Colorado 80202 | DATE FILED: January 18, 2023 2:26 PM<br>FILING ID: 88BBDCE336E82<br>CASE NUMBER: 2023CV30168 |
| **Plaintiffs:**<br><br>**STANISLAV BABAYEV & OLEG CHIKOV**<br><br>v.<br><br>**Defendants:**<br><br>**THE HERTZ CORPORATION, ACE AMERICAN INSURANCE COMPANY D/B/A CHUBB NATIONAL INSURANCE COMPANY A/K/A CHUBB INDEMNITY INSURANCE COMPANY, AND ESIS, INC A/K/A CHUBB GLOBAL RISK ADVISORS** | ▲ COURT USE ONLY ▲ |
| *Attorneys for Plaintiffs*:<br>Jacob Galperin, #45625<br>Jordan Willison, #52355<br>Galperin and Associates<br>3773 Cherry Creek North Drive, Ste. 701E<br>Denver, Colorado 80209<br>Telephone: (720) 501-3451<br>Fax Number: (720) 533-6222<br>E-mail: jg@galperinlegal.com<br><br>Kenneth R. Fiedler, #46934<br>James R. Anderson, #49511<br>Ken Fiedler Injury Law<br>4725 S. Monaco St. Suite 120<br>Denver, CO 80237<br>Telephone: (720) 996-6000<br>Fax Number: (720) 696-7962<br>E-mail: Ken@kfinjurylaw.com | Case Number:<br><br>Division: |
| **COMPLAINT AT LAW WITH JURY DEMAND** | |

COME NOW Plaintiffs, Stanislav Babayev and Oleg Chikov, by and through undersigned counsel, for their **COMPLAINT AT LAW WITH JURY DEMAND** against the above-named Defendants, state and allege as follows:

**I.   PARTIES**

1.  Plaintiff Stanislav Babayev ("Mr. Babayev") is a resident of the State of Colorado and resides

1

**EXHIBIT F 001**

2. Plaintiff Oleg Chikov ("Mr. Chikov") is a resident of the State of Colorado and resides at 9243 W. 103rd Avenue, Westminster, Colorado 80021.

3. Defendant The Hertz Corporation ("Hertz") is a corporation qualified to do business in the State of Colorado and provides rental cars to individuals within the State of Colorado and provides those individuals with the option to purchase automobile insurance coverage, including underinsured and uninsured motorist coverage ("UM/UIM") benefits. Defendant Hertz lists its registered agent as located in the County of Arapahoe, State of Colorado.

4. Defendant Ace American Insurance Company d/b/a CHUBB National Insurance Company a/k/a Chubb Indemnity Insurance Company ("Ace/CHUBB") is a foreign corporation qualified to do business in the State of Colorado. Ace's principal office is located at 436 Walnut Street, Philadelphia, PA 19106. The State of Colorado Secretary of State website has CT Corporation System, 600 N. 2nd Street, Ste. 401, Harrisburg, Colorado 17101 listed as the registered agent.

5. Defendant ESIS, Inc. a/k/a Chubb Global Risk Advisors ("ESIS") is a foreign corporation qualified to do business in the State of Colorado. Ace's principal office is located at 436 Walnut Street, Philadelphia, PA 19106. The State of Colorado Secretary of State website has CT Corporation System, 7700 E. Arapahoe Rd. Suite 220, Centennial, CO 80112-1268.

## II. JURISDICTION AND VENUE

6. The Court has personal jurisdiction over Defendants in this matter, upon service of process, pursuant to C.R.S. § 13-1-124 because Defendants conduct systematic and continuous business in the state of Colorado.

7. Venue is proper in this Court pursuant to C.R.C.P. 98(c)(1), which Plaintiffs designate as the place of trial in the State of Colorado and because and because Defendants are non-residents and may be found doing business in this county.

## III. BACKGROUND

8. On February 26, 2020, Mr. Babayev was the front seat passenger in a 2019 Hyundai Elantra ("subject vehicle") being driven by Roman Rakhimov and traveling southbound on E. Smoky Hill Rd just north of its intersection with E. Tufts Place in Aurora, Arapahoe County, Colorado.

9. At all times relevant hereto, the subject vehicle was a rental vehicle legally rented by Mr. Rakhimov from Hertz on February 26, 2020.

10. At all times relevant hereto, Mr. Chikov was the left rear passenger in the subject vehicle.

11. At all times relevant hereto, a white van or truck struck the subject vehicle from the side and pushed the subject vehicle into the guardrail before coming to a stop. The white van or truck ("Hit and Run vehicle") fled from the scene of the crash ("subject crash").

EXHIBIT F 002

12. The occupants of the subject vehicle contacted 911.

13. The Aurora Police Department, Fire Department and Paramedics responded to the scene.

14. The Aurora Police Department investigated the crash and found damage to the driver's side of the subject vehicle along with white paint transfer.

15. The Aurora Police Department documented the damage to the subject vehicle as "moderate."

16. Mr. Babayev and Mr. Chikov were taken by ambulance to the emergency room at Parker Adventist Hospital with complaints of injuries.

17. As a direct and proximate result of the Hit and Run, Mr. Babayev, who was only 34- years old at the time, sustained severe and permanently disabling bodily injuries, including but not limited to his neck, back, head and chest, among others.

18. As direct and proximate result of the Hit and Run, Mr. Chikov, who was only 43- years old at the time, sustained severe and permanently disabling physical and emotional injuries, including but not limited to his head, neck, back, right arm, right shoulder and right knee, among others.

19. According to Mr. Babayev's medical providers, he suffered lumbar sprain/strain, lumbar radiculopathy, L5-S1 disc herniation with impingement, cervical sprain/strain, C3-4 disc herniation with impingement, cervical radiculopathy, concussion, post-concussive syndrome and post-traumatic stress disorder (PTSD), among other injuries.

20. In order to further evaluate and manage the traumatic injuries caused by the Hit and Run, Mr. Babayev treated with several medical providers and received medical care including, but not limited to, physical therapy, chiropractic care, medication therapy, post-concussive therapy, lumbar bracing, injection therapy and lumbar surgery.

21. According to Mr. Chikov's medical providers, he suffered a complex tear of the medial meniscus in the right knee, joint effusion in the right knee, lumbar sprain, lumbar radiculopathy, disc herniations at L2-3, L3-4 and L4-5, cervical sprain/strain, cervical radiculopathy, C5-6 and C6-7 annular fissures, concussion and post-concussive syndrome, among other injuries.

22. In order to further evaluate and manage the traumatic injuries caused by the Hit and Run, Mr. Chikov treated with several medical providers and received medical care including, but not limited to, physical therapy, chiropractic care, post-concussive therapy, medication therapy, injection therapy, knee surgery and cervical surgery.

23. As a direct and proximate result of the Hit and Run, Mr. Babayev incurred past medical bills for medically necessary treatment in an amount in excess of $333,812.65 and will more likely than not continue to incur additional medical bills in the future.

24. As a direct and proximate result of the Hit and Run, Mr. Chikov incurred past medical bills for medically necessary treatment in an amount in excess of $378,772.96 and will more likely than not continue to incur additional medical bills in the future.

**EXHIBIT F 003**

25. As a direct and proximate result of the Hit and Run, Mr. Babayev has sustained physical impairment and disfigurement.

26. As a direct and proximate result of the Hit and Run, Mr. Chikov has sustained physical impairment and disfigurement.

27. As a direct and approximate result of the Hit and Run, Mr. Babayev has sustained and will sustain in the future pain and suffering and loss of enjoyment of life.

28. As a direct and approximate result of the Hit and Run, Mr. Chikov has sustained and will sustain in the future pain and suffering and loss of enjoyment of life.

29. At all times relevant to this action, the subject vehicle had an automobile liability insurance policy which provided uninsured/underinsured motorist benefits pursuant to C.R.S. § 10-4-609(4) up to a global limit of one million dollars ($1,000,000.00) ("UM Insurance").

30. The UM Insurance was in effect as a result of Liability Insurance Supplement ("LIS") coverage purchased by Mr. Rakhimov from Hertz at the time he rented the subject vehicle.

31. An employee of Hertz sold Mr. Rakhimov the LIS coverage which attached the UM Policy to the subject vehicle.

32. The Hertz employee that sold Mr. Rakhimov the LIS coverage was not a licensed insurance producer.

33. The Hertz employee that sold Mr. Rakhimov the LIS coverage was not trained on how to sell insurance policies.

34. The Hertz employee that sold Mr. Rakhimov the LIS coverage did not provide him with a copy of the full policy that provided UM Insurance in the event of a claim.

35. The Hertz employee that sold Mr. Rakhimov the LIS coverage did not explain in detail the terms and conditions, including any exclusions or duties of either party subject to the UM Insurance policy which provided coverage in the event of a claim.

36. The Hertz employee was not qualified to sell insurance products to the general public in the state of Colorado pursuant to insurance industry standards.

37. The Hertz employee that sold Mr. Rakhimov the LIS coverage was not qualified to interpret insurance policy language to the general public in the state of Colorado pursuant to insurance industry standards.

38. The LIS coverage sold by Hertz attached UM Insurance to the subject vehicle through the Ace/CHUBB insurance policy #ISA H25275718 ("CHUBB Policy").

39. The UM Insurance was in effect on the date of the car crash, February 27, 2020.

40. The CHUBB Policy was in effect on the date of the car crash, February 27, 2020.

41. Mr. Babayev and Mr. Chikov were beneficiaries of the LIS coverage purchased by Mr. Rakhimov.

42. Mr. Babayev and Mr. Chikov were beneficiaries under the UM Insurance.

43. At all times relevant hereto, ESIS was a third-party claims administrator acting on behalf of Hertz and provided claims administration for UM Insurance claims made pursuant to the LIS Coverage.

44. At all times relevant hereto, ESIS was a third-party claims administrator acting on behalf of ACE/CHUBB and provided claims administration for UM Insurance claims made pursuant to the LIS Coverage sold by Hertz.

45. ESIS was contracted to work as a third-party claims administrator for Hertz as a condition of the CHUBB Policy.

46. ESIS, as a third-party administrator, performs the same functions in adjusting claims that are traditionally performed by insurance companies.

47. Mr. Rakhimov and Plaintiffs timely notified Hertz of the Hit and Run.

48. Hertz notified ESIS of the Hit and Run.

49. On March 11, 2020, ESIS stated that they had begun its investigation into the loss.

50. At all times relevant hereto, ESIS assigned its employee Samantha Howard, to investigate, evaluate, and resolve Plaintiffs' UIM claim on behalf of Hertz and ESIS.

51. As an employee of ESIS, Ms. Howard's actions are imputed vicariously to ESIS.

52. As a third-party administrator of an insurance claim, ESIS owed a duty to Plaintiffs to not unreasonably delay or deny payment of a claim for benefits owed to Plaintiffs under the policy.

53. On or about June 24, 2020, Plaintiffs provided a recorded statement to ESIS that was terminated by ESIS.

54. In lieu of recorded statements, Ms. Howard advised in writing that written statements could be submitted for Plaintiffs.

55. On or about June 25, 2020, Plaintiffs submitted written statements to ESIS.

56. On or about August 20, 2020, the relevant medical records and bills for Plaintiffs were provided to ESIS for evaluation of benefits under the UM Policy.

5

EXHIBIT F 005

57. At all times relevant hereto, Plaintiffs continued to provide copies of medical bills and records to ESIS as they completed treatment.

58. On or about September 8, 2020, ESIS requested for the first time prior medical records for both Mr. Babayev and Mr. Chikov that pertain to the same areas of their body as they allege to have been injured in the subject collision.

59. On or about September 8, 2020, ESIS requested another opportunity to take the recorded statement of Plaintiffs, despite having the previous opportunity to do so on June 24, 2020 and despite having in their possession Plaintiffs' written statements.

60. On or about September 8, 2020, Plaintiffs requested from ESIS whether there was anything else that ESIS needed to complete its evaluation of Plaintiffs' claims.

61. At all times relevant hereto, attorney George H. Parker, Esq. of Dewhirst & Dolven, LLC ("Mr. Parker") also provided claims administration on behalf of Hertz and ESIS.

62. At all times relevant hereto, Plaintiffs claims were administered by a team of four people: Ms. Howard, Mr. Parker, and Hertz's vice presidents Clark Dubin and William Lacko.

63. The team of four people worked together to make decisions regarding Plaintiffs' claim under the UM Insurance.

64. Mr. Parker, working in his capacity as a claims administrator for both Hertz and ESIS, owed a duty to Plaintiffs to not unreasonably delay or deny payment of a claim for benefits owed to Plaintiffs under the UM Insurance.

65. Mr. Dubin and Mr. Lacko, working in their capacity as officers and employees of Hertz, owe a duty of candor and good faith in their handling and administration of claims under the LIS coverage sold by Hertz to their customers.

66. The CHUBB Policy, which is an insurance contract between Hertz and Ace/CHUBB, is a "fronting policy" where Hertz, as the insured, has a deductible equal to the policy limits.

67. The CHUBB Policy's deductible is $1,000,000.00.

68. The CHUBB Policy's limits are $1,000,000.00.

69. Hertz is financially responsible for reimbursement of any amounts paid on any claims under the CHUBB Policy up to the CHUBB Policy's deductible.

70. Ace/CHUBB is not responsible for any damages which exceeds the CHUBB Policy's limits of $1,000,000.00.

71. On or about September 24, 2020, Plaintiffs were informed for the first time that Hertz and ESIS was hiring a medical doctor, Philip A. Stull ("Dr. Stull"), to review the claim in support of its position.

6

**EXHIBIT F 006**

72. On or about September 25, 2020, Plaintiffs offered to make themselves available again to provide recorded statements.

73. On or about September 25, 2020, Plaintiffs again asked whether there was anything further that Hertz and ESIS needed to complete its evaluations of the UM Insurance benefits.

74. On or about October 20, 2020, Plaintiffs followed up with prior emails and voicemails directed to Hertz and ESIS which had requested updates on the status of their evaluations of the UM Insurance benefits.

75. On or about November 2, 2020, Dr. Stull issued a report for Mr. Babayev stating in part that any medical treatment provided after April of 2020 relating to his cervical spine was unrelated to the subject crash, his lumbar spine symptoms were due to pre-existing conditions and the cervical injections were unrelated, among other things.

76. Dr. Stull's opinions are directly contrary to Dr. Babayev's treating physicians.

77. On or about November 1, 2020, Dr. Stull issued a similar report regarding Mr. Chikov stating in part that any treatment beyond six to eight weeks relating to his cervical spine was unrelated to the subject crash and that he did not sustain any injuries to his lumbar spine, right knee or shoulder, among other things.

78. Dr. Stull's opinions are directly contrary to Dr. Chikov's treating physicians.

79. On or about December 3, 2020, Hertz and ESIS completed their joint evaluation of Mr. Chikov and Mr. Babayev's UM Insurance benefits claim.

80. At no point had either Hertz or ESIS informed Plaintiffs that Ace/CHUBB was involved in the claims adjusting process of Plaintiffs' claims.

81. Upon information and belief, Ace/CHUBB was not involved in the claim in claims adjusting process of Plaintiffs' claims.

82. As the insurance carrier of the CHUBB Policy, Ace/CHUBB is the insurer directly responsible for coverage of benefits for any claims under the UM Insurance.

83. Ace/CHUBB is the insurer responsible for coverage of benefit for Plaintiffs claims under the UM Insurance.

84. Ace/CHUBB is the insurer responsible for coverage of benefit for Plaintiffs claims under the LIS coverage sold by Hertz.

85. By selling LIS insurance and participating in adjusting Plaintiffs claims, Hertz acted as a third-party administrator for Ace/CHUBB on Plaintiffs' claims.

86. On or about December 3, 2020, Hertz and ESIS offered $41,000.00 in undisputed damages to

EXHIBIT F 007

resolve Mr. Chikov's claim.

87. Hertz and ESIS's evaluation of Mr. Chikov's claim included payment for certain past medical care and treatment in the amount of $32,665.34 and past pain and suffering in the amount of $8,000.00.

88. Hertz and ESIS's evaluation of Mr. Chikov's UM claim did not include all of Mr. Chikov's past medical expenses.

89. Hertz and ESIS's evaluation of Mr. Chikov's UM claim did not include future medical care and treatment.

90. Hertz and ESIS's evaluation of Mr. Chikov's UM claim did not include future pain and suffering.

91. Hertz and ESIS's evaluation of Mr. Chikov's UM claim did not include past and future impairment and/or disfigurement.

92. On or about December 3, 2020, Hertz and ESIS offered $73,000.00 in undisputed damages to resolve Mr. Babayev's claim.

93. Hertz and ESIS's evaluation of Mr. Babayev's UM claim included payment for certain past medical care and treatment in the amount of $52,521.25, past pain and suffering in the amount of $15,000.00 and $5,000.00 for concussion and post-concussive syndrome.

94. Hertz and ESIS's evaluation of Mr. Babayev's UM claim did not include all of Mr. Babayev's past medical expenses.

95. Hertz and ESIS's evaluation of Mr. Babayev's UM claim did not include future medical care and treatment.

96. Hertz and ESIS's evaluation of Mr. Babayev's UM claim did not include future pain and suffering.

97. Hertz and ESIS's evaluation of Mr. Babayev's UM claim did not include past and future impairment and/or disfigurement.

98. Dr. Stull's report contained numerous factual errors, inconsistencies and omissions about Plaintiffs' medical records and treatment.

99. On or about December 21, 2020, Plaintiffs informed Hertz and ESIS via Mr. Parker of the inaccuracies of Dr. Stull's report pertaining to Mr. Chikov including, but not limited to, overlooking relevant complaints of knee and low back pain made to treating physicians as well as an EMG report demonstrating an acute cervical injury to C6-7, among other things.

100. On or about December 21, 2020, Plaintiffs informed Hertz and ESIS via Mr. Parker of the inaccuracies in Dr. Stull's report pertaining to Mr. Babayev including, but not limited to, the

EXHIBIT F 008

absence of a prior history of low back injury and acute lumbar MRI findings involving L5-S1, among other things.

101. Hertz and ESIS subsequently retained a biomechanical engineer to help support its evaluations.

102. Hertz and ESIS subsequently retained an accident reconstructionist to help support its evaluations.

103. On or about March 22, 2021, Plaintiffs provided Hertz and ESIS with additional records and bills for Mr. Chikov pertaining to a two-level disc replacement at the C5-7 levels and which amounted to $229,757.00.

104. On March 31, 2021, Hertz and ESIS provided an additional report from Dr. Stull dated March 24, 2021, relating to the additional medical records received for Mr. Chikov's spine surgery. Dr. Stull maintained his position that Mr. Chikov's spine surgery was not related to the subject crash despite Mr. Chikov's treating physicians' opinions to the contrary.

105. On March 31, 2021, Hertz and ESIS also provided reports by its retained experts, a biomechanical engineer and accident reconstructionist, to help support its UM evaluation.

106. The biomechanical engineer's report relied upon the findings set forth in the accident reconstructionist report from the same company to support Hertz and ESIS's UM evaluation.

107. The biomechanical engineer's report omits Plaintiffs' treating physicians' opinions relating the causal connection of the injuries sustained by Mr. Chikov and Mr. Babayev.

108. On or about April 26, 2021, Plaintiffs provided a narrative report by Dr. John Barker, one of Mr. Chikov's treating physicians, opining that Mr. Chikov's cervical spine surgery was the result of the subject collision, permanent, and that he required future medical care and treatment, among other things.

109. On or about April 26, 2021, Plaintiffs provided a narrative report by Dr. John Barker, one of Mr. Babayev's treating physicians, opining that Mr. Babayev's lumbar spine surgery was the result of the subject collision, permanent, and required future medical care and treatment, among other things.

110. On or about April 26, 2021, Plaintiffs provided a narrative report by Dr. Rentz, one of Mr. Chikov's treating physicians, opining that Mr. Chikov's traumatic injuries were the result of the subject collision, permanent, and required future medical treatment, among other things.

111. On or about April 26, 2021, Plaintiffs provided a narrative report by Dr. Rentz, one of Mr. Babayev's treating physicians, opining that Mr. Babayev's traumatic injuries were the result of the subject collision, permanent, and required future medical treatment, among other things.

112. On June 7, 2021, Hertz and ESIS offered to pay benefits under the UM Insurance to Mr. Babayev undisputed damages in the amount of $60,021.25.

113. Prior to and at the time of the aforesaid offer to Mr. Babayev, Hertz was in possession of all relevant medical records and bills from the treating providers including, but not limited to, Rocky Mountain EMS, Parker Adventist Hospital, Diversified Radiology, USACS of Colorado, Denver Diagnostic Pain, Touchstone Imaging, Rocky Mountain Spine Clinic, Uptown Brain Injury, Colorado Physio Therapy, Colorado Chiropractic Rehabilitation and Medical Center of Aurora.

114. The aforesaid relevant documentation that was provided to Hertz and ESIS demonstrates Mr. Babayev's damages: past and future economic and noneconomic losses, physical impairment, pain and suffering, disfigurement and loss of normal life, which is well in excess of said offer for benefits under the UM Insurance.

115. On June 7, 2021, Hertz offered to pay benefits under the UM Insurance to Mr. Chikov undisputed damages in the amount of $40,546.40.

116. Ace/CHUBB, as the insurer responsible for insurance coverage under the UM Insurance, has a duty to pay all undisputed benefits without unreasonable delay.

117. ESIS, as a third-party administrator for Ace/CHUBB, has a duty to pay all undisputed benefits without unreasonable delay.

118. Hertz, as a third-party administrator for Ace/CHUBB, has a duty to pay all undisputed benefits without unreasonable delay.

119. Prior to and at the time of the aforesaid offer to Mr. Chikov, Hertz and ESIS was in possession of all relevant medical records and bills from the treating providers including, but not limited to, Rocky Mountain EMS, Parker Adventist Hospital, Diversified Radiology, USACS of Colorado, Denver Diagnostic Pain, Touchstone Imaging, Spinal Kinetics, Peak Orthopedics, Westminster Accident & Injury and Rocky Mountain Accident Care.

120. The aforesaid relevant documentation that was provided to Hertz and ESIS demonstrates Mr. Chikov's damages: past and future economic and noneconomic losses, physical impairment, pain and suffering, disfigurement and loss of normal life, which is well in excess of said offer for benefits under the UM Insurance.

121. Despite being in possession of the relevant medical documentation, Hertz and ESIS have not offered or paid any additional money to resolve the UM benefits claim but rather, maintained their previous position.

122. ESIS, as the third-party administrator for Ace/CHUBB, has failed to timely respond to Plaintiffs' inquiries about the payment of benefits owed, has failed to reasonably and timely evaluate Plaintiffs' claim for benefits and has unreasonably denied and delayed payment of Plaintiffs' benefits by withholding payment of undisputed funds.

123. Hertz, as the third-party administrator for Ace/CHUBB, has failed to timely respond to Plaintiffs' inquiries about the payment of benefits owed, has failed to reasonably and timely evaluate Plaintiffs' claim for benefits and has unreasonably denied and delayed payment of

EXHIBIT F 010

Plaintiffs' benefits by withholding payment of undisputed funds.

124. Ace/CHUBB, as the insurer of the UM Insurance, owes Plaintiffs a non-delegable duty of good faith and fair dealing when it, or any third-party administrator acting on its behalf, adjusts Plaintiffs' claims for UM Insurance benefits.

125. Upon information and belief, ESIS and Hertz never notified Ace/CHUBB of Plaintiffs' claims.

126. Upon information and belief, ESIS and Hertz acted in the best interests of Hertz and Ace/CHUBB and did not give equal consideration to the interests of Plaintiffs.

127. Upon information and belief, Hertz's sale of LIS coverage was designed to extend UM/UIM coverage to purchasers of the LIS coverage and their passengers pursuant to C.R.S. § 10-4-609.

128. Hertz's representation of its offering of LIS coverage is deceptive, insomuch as it does not describe or explain the limitations or exclusions of the UM Insurance, the actual terms or conditions of the UM Insurance contract, or the true provider of the UM Insurance coverage.

129. Hertz's third-party handling of claims under the LIS coverage is deceptive, insomuch as it allows Hertz to act in its own best interest without having the same duty of good faith and fair dealing that a typical first-party insurer has for its own insured, a fact which is never disclosed to actual or potential consumers of the LIS insurance product.

130. Hertz's employees are not licensed insurance producers licensed to sell insurance products in the state of Colorado.

131. As a result of Hertz's deceptive practices, consumers and potential consumers, including but not limited to Plaintiffs, may be and are harmed by having legitimate claims delayed and/or denied as a result of Hertz's deceptive practices while having their rights under first-party bad faith laws jeopardized or extinguished by withholding vital, relevant information regarding Hertz's third-party claims handing practices on behalf of Ace/CHUBB, Hertz's financial stake in the outcome of first-party claims under LIS coverage, and its duty to the consumer of LIS coverage as opposed to Ace/CHUBB's duty of good faith and fair dealing for first-party claims.

### IV. PLAINTIFFS' FIRST CLAIM FOR RELIEF
### (BREACH OF CONTRACT-Ace/CHUBB)

132. Plaintiffs incorporate all allegations set forth in this Complaint.

133. Mr. Rakhimov entered into a contract for LIS coverage with Hertz.

134. LIS coverage extended the UM Insurance coverage of the CHUBB Policy to Mr. Rakhimov and his passengers in the rental car.

135. Plaintiffs are intended beneficiaries of the automobile insurance benefits under the CHUBB Policy.

EXHIBIT F 011

136. As a provider of insurance services to the public, Ace/CHUBB had a non-delegable duty at all times to be actuated by good faith and fair dealing in everything pertaining thereto, abstain from deceptive or misleading practices and keep, observe, and practice the principles of law and equity in all matters pertaining to the business of insurance.

137. Under Colorado law, every insurance contract contains an implied covenant of good faith and fair dealing and imposes on insurers a duty to act in good faith with their insureds. Pursuant to its implied duty of good faith and fair dealing, Ace/CHUBB owed to Plaintiffs an obligation to treat Plaintiffs' interests with equal consideration to their own interests.

138. Ace/CHUBB has breached its contract with Plaintiffs by failing to pay uninsured motorist benefits to Plaintiffs under the UM Insurance as a result of their injuries, damages and losses sustained in the subject crash.

139. Ace/CHUBB has breached its contract with Plaintiffs by delaying the payment uninsured motorist benefits to Plaintiffs under the UM Insurance as a result of their injuries, damages and losses sustained in the subject crash.

140. Plaintiffs have complied with all conditions precedent to coverage under the insurance policy issued by Hertz to Plaintiffs.

141. Plaintiffs have substantially performed their part of said contract.

142. As a direct and proximate result of Ace/CHUBB's breach of contract, Plaintiffs have suffered injuries, damages and losses in the amount to be proved at the time of trial.

### V. PLAINTIFFS' SECOND CLAIM FOR RELIEF
### (BAD FAITH BREACH OF INSURANCE CONTRACT-
### ACE/CHUBB and ESIS)

143. Plaintiffs incorporate all allegations set forth in this Complaint.

144. As a provider of insurance services to the public, Ace/CHUBB had a non-delegable duty at all times to be actuated by good faith and fair dealing in everything pertaining thereto, abstain from deceptive or misleading practices and keep, observe, and practice the principles of law and equity in all matters pertaining to the business of insurance.

145. Under Colorado law, every insurance contract contains an implied covenant of good faith and fair dealing and imposes on insurers a non-delegable duty to act in good faith with their insureds. Pursuant to its implied duty of good faith and fair dealing, Ace/CHUBB owed to Plaintiffs an obligation to treat Plaintiffs' interests with equal consideration to their own interests.

146. As a third-party administrator for Ace/CHUBB and Hertz, ESIS's actions may hold them out as an insurer and created a duty of good faith and fair dealing with Plaintiffs, and therefore ESIS may be in violation of the tort of bad faith if it breaches is duty.

EXHIBIT F 012

147. Ace/CHUBB acted unreasonably in unreasonably denying uninsured motorist payments to Plaintiffs, in failing to timely evaluate Plaintiffs' claims for benefits, in delaying and denying the payment of owed benefits to Plaintiffs, and in improperly evaluating the Plaintiffs' claims for benefits.

148. Ace/CHUBB knew that their conduct was unreasonable or Ace/CHUBB recklessly disregarded the fact that their conduct was unreasonable.

149. Ace/CHUBB's unreasonable conduct was a direct and proximate cause of Plaintiffs' injuries, damages and losses.

150. ESIS acted unreasonably in unreasonably denying uninsured motorist payments to Plaintiffs, in failing to timely evaluate Plaintiffs' claims for benefits, in delaying and denying the payment of owed benefits to Plaintiffs, and in improperly evaluating the Plaintiffs' claims for benefits.

151. ESIS knew that their conduct was unreasonable or ESIS recklessly disregarded the fact that their conduct was unreasonable.

152. ESIS's unreasonable conduct was a direct and proximate cause of Plaintiffs' injuries, damages and losses.

## VI.   PLAINTIFFS' THIRD CLAIM FOR RELIEF
(STATUTORY UNREASONABLE DELAY AND
DENIAL OF INSURANCE BENEFITS IN VIOLATION OF C.R.S. §§ 10-3-1115
and 1116-ACE/CHUBB and ESIS)

153. Plaintiffs incorporate all allegations set forth in this Complaint.

154. Ace/CHUBB is a person engaged in the business of insurance within the meaning of Colorado Revised Statutes, section 10-3-1115(1)(a).

155. Plaintiffs are first party claimants within the meaning of Colorado Revised Statutes, section 10-3-1115, and have asserted an entitlement to insurance benefits owed directly to them under an insurance policy.

156. As a third-party administrator for Ace/CHUBB and Hertz, ESIS's actions may hold them out as an insurer and created a duty of good faith and fair dealing with Plaintiffs, and therefore ESIS may be in violation of sections 10-3-1115 and 10-3-1116 of Colorado Revised Statutes if it breaches is duty.

157. Ace/CHUBB violated sections 10-3-1115 and 10-3-1116 of Colorado Revised Statutes, when they unreasonably denied and delayed payment of Plaintiffs' benefits under the CHUBB Policy.

158. ESIS violated sections 10-3-1115 and 10-3-1116 of Colorado Revised Statutes, when they unreasonably denied and delayed payment of Plaintiffs' benefits under the CHUBB Policy.

159. Plaintiffs' benefits under the CHUBB Policy are "covered benefits" within the meaning of

EXHIBIT F 013

Colorado Revised Statutes, section 10-3-1116(1).

160. As a direct and proximate and foreseeable result of Ace/CHUBB's unreasonable delay or denial of uninsured motorist benefits payments, Plaintiffs have suffered injuries, damages and losses.

161. As a direct and proximate and foreseeable result of ESIS's unreasonable delay or denial of uninsured motorist benefits payments, Plaintiffs have suffered injuries, damages and losses.

162. Pursuant to Colorado Revised Statutes, section 10-3-1116(1), Plaintiffs are entitled to recover an amount equal to the twice the amount of "covered benefits" that were denied or delayed, plus reasonable attorney fees and costs incurred in connection with the prosecution of this claim.

## VII. PLAINTIFFS' FOURTH CLAIM FOR RELIEF
### (VIOLATION OF C.R.S. § 6-1-113-HERTZ)

163. Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

164. By its actions described above, Hertz engaged in deceptive trade practices relating to the marketing, sale, and representation of the LIS benefits sold to Mr. Rakhimov and other actual and potential consumers in Colorado.

165. Hertz's deceptive trade practices relating to the marketing, sale, and representation of the LIS benefits include, but are not limited to:

   (a) Knowingly or recklessly passing services off as those of another;

   (b) Knowingly or recklessly making false representation as to the source, sponsorship, approval, or certification of goods, services, or property;

   (c) Failing to deliver to the customer at the time of an installment sale of goods or services a written order, contract, or receipt setting forth the name and address of the seller, the name and address of the organization which he represents, and all of the terms and conditions of the sale, including a description of the services, stated in readable, clear, and unambiguous language;

   (d) Failing to disclose material information concerning services which information was known at the time of an advertisement or sale by which such failure to disclose such information was intended to induce consumers to enter into a transaction;

   (e) Refuses or fails to obtain all governmental licenses or permits required to perform the services or to sell the services as agreed to or contracted for with a consumer;

   (f) Knowingly or recklessly engaged in unfair, unconscionable, deceptive, deliberately misleading, false, or fraudulent acts and practices.

14

**EXHIBIT F 014**

166. Hertz's business practices relating to LIS coverage resulted in injury to Plaintiffs, in an amount to be determined at trial, by delaying and resulting in denial of their UM Insurance benefits, jeopardizing their UM Insurance benefits, and forcing them to initiate fruitless litigation by hiding the real party at interest.

167. Pursuant to C.R.S. § 6-1-113, Plaintiffs are entitled to five hundred dollars or three times the amount of actual damages sustained in the case of bad faith conduct, plus reasonable attorneys' fees and costs of the action.

### PLAINTIFFS DEMAND TRIAL BY JURY ON ALL ISSUES

**WHEREFORE**, Plaintiffs pray for the entry of Judgment in their favor and against the Defendants for breach of contract in the amount of the covered benefits plus costs and prejudgment interest pursuant to C.R.S. § 13-21-101, post judgment interest, together with an amount equal to twice the covered benefits plus attorney fees and costs pursuant to C.R.S. §§ 10-3-1115 and -1116; damages pursuant to C.R.S. § 6-1-113, five hundred dollars or three times the amount of actual damages sustained in the case of bad faith conduct, plus reasonable attorneys' fees and costs of the action and granting such other and further relief as this Court deems just and proper under the circumstances.

Respectfully submitted this 18th day of January, 2023.

**GALPERIN AND ASSOCIATES**

*Original Signature on File at the Offices*
*Of Galperin and Associates, PC*

By: */s/ Jacob Galperin*
Jacob Galperin, Esq. #45625
Jordan Willison, Esq. #52355
3773 Cherry Creek North Drive, Ste. 701E
Denver, Colorado 80209
Telephone: (720) 501-3451
E-mail: jg@galperinlegal.com
           jw@galperinlegal.com
**ATTORNEYS FOR PLAINTIFFS**

Plaintiff Babayev's Address:
2242 S. Macon Court
Aurora, Colorado 80013

Plaintiff Chikov's Address:
9243 W. 103rd Avenue
Westminster, Colorado 80021

15

**EXHIBIT F 015**

16

**EXHIBIT F 016**